# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERTA GIBBS, | : |
|     Plaintiff, | : |
| v. | :    3:04-cv-01537 (WWE) |
| CITY OF NEW HAVEN, ET AL. | : |
|     Defendants. | : |

## MEMORANDUM OF DECISION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action arises from plaintiff Alberta Gibbs' claims that defendants, City of New Haven and Nichole Jefferson, discriminated and retaliated against her on the basis of age and disability in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a). Now pending before the Court is defendants' Motion for Summary Judgment (Doc. #24).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claims and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claims.

## BACKGROUND

The parties have submitted briefs, a stipulation of facts and supporting exhibits. This evidence reflects the following factual background.

Plaintiff was employed by the Commission on Equal Opportunities ("CEO") of the City of New Haven for over twenty-five years, until November 2002. At the time of defendant Jefferson's appointment and until plaintiff's departure, plaintiff

served as an Administrative Assistant I.  At the time of her departure, plaintiff was 44 years old.

Defendant Jefferson is an employee of the City of New Haven and the CEO.  She was plaintiff's supervisor and the Executive Director of the CEO from December 2001 until plaintiff's departure from the position.  Prior to her appointment, defendant Jefferson asserts that she was friendly with plaintiff.

When she began working at the CEO, Jefferson believed that the office was in the need of cleaning and reorganization.  Jefferson therefore held individual meetings with the employees to learn more about their roles in the office, their skills and experiences.

Following her meeting with Gibbs, Jefferson believed that Gibbs could handle additional work and therefore gave her more substantive assignments.  According to Jefferson, these assignments fell within Gibbs' job description as an Administrative Assistant; Gibbs disagrees and asserts that the duties assigned to her were effectively the duties of the Contract Compliance Director and Utilization Monitor.

Prior to receiving these new responsibilities, plaintiff's position was purely administrative.  Her responsibilities consisted entirely of administrative tasks such as answering phones, ordering supplies, handling payroll records, taking minutes of meetings and signing overtime cards.

Among plaintiff's new responsibilities were reviewing contracts to see if they complied with the relevant legal requirements and performing research on the relevant contractors and subcontractors, including the establishment of compliance goals.  Jefferson also gave Gibbs a new unofficial title of "Pre-Award Specialist" and

promised Gibbs a pay raise, which plaintiff claims, was never provided. Plaintiff claims that she had never before performed her new duties. She further contends that she enjoyed certain aspects of the work, but was also stressed about the quantity of it and that she was never provided with the help or guidance that she requested.

After joining the CEO, Jefferson hired two new employees, both of whom were younger than plaintiff. Lisa Muniz was hired as an Administrative Assistant and was paid less than plaintiff. Plaintiff was instructed to train Muniz. Shevalle Turner was hired as a Utilization Monitor II. Plaintiff recommended that a friend be hired for one of these positions who was of similar age to plaintiff; plaintiff's friend was not hired.

In May 2002, plaintiff told Jefferson that she was not interested in her new duties and asked to be given her former administrative duties. Plaintiff alleges that Jefferson responded by telling plaintiff to "get another job."

Thereafter, plaintiff alleges that other staff members were told not to seek the assistance of plaintiff, not to assist plaintiff, not to allow plaintiff to be at their desk, not to speak with plaintiff and to otherwise avoid her. Furthermore, plaintiff alleges that she was held out of internal meetings and isolated from contact with the public insofar as she was not to greet visitors. Plaintiff alleges that Jefferson told staff members that plaintiff is not their friend, that plaintiff is "crazy," "nutsy," a "manipulator," a "troublemaker," "very slick" and "tricky." One staff member was also warned to "watch [her] back" and "watch [her] boss's back."

Throughout June, July, August and September 2002, plaintiff took significant time off. Specifically, she took one week in June on medical leave, then several weeks of vacation, followed by approximately two months of medical leave.

3

During her time at the office during that summer 2002, plaintiff contends that her work situation deteriorated. Upon returning from her first sick leave on June 17, plaintiff was told to relocate out of her individual office and into a new room. She was also not given new assignments during her week back before going on vacation. Upon returning from vacation around July 15, plaintiff observed a student intern occupying her former office, rather than a deputy director Jefferson had allegedly told her would be taking over her office. Defendants state that the Equal Employment Officer for New Haven, Hildred Pearson, who regularly dealt with sensitive and confidential information, moved into plaintiff's former office. Hyla Greenberg, an employee older than plaintiff, whose work also involved secure financial information, received the other office.

On July 15, 2002, plaintiff alleges that Jefferson gave her a "massive assignment with an unrealistic time for completion." The next day, Jefferson gave plaintiff two written warnings sent to, among others, human resources, a union leader and an administrator. The first warning addressed plaintiff's failure to turn in an assignment when it was due. The second warning was for leaving the office during the work day. Plaintiff responded on July 24 with a note detailing her progress on the assignments and defending her actions.

On August 23, 2002, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities alleging that she was discriminated against based on her age and a perceived mental disorder and that such discrimination resulted in the warnings, the denial of an office and the delegation of difficult assignments.

Following her return to the office from medical leave in September 2002, plaintiff claims that she continued to receive work assignments with unreasonable deadlines that she was unable to complete. When she asked for assistance on these projects, plaintiff contends that she received none. In a memorandum to plaintiff dated October 18, 2002, Jefferson observed that plaintiff had not completed a previously-assigned task; she warned plaintiff that failure to complete it, or to be late with additional assignments, would result in disciplinary actions. Plaintiff responded to Jefferson that she had not received the necessary guidance and had kept Jefferson apprised of the status of the assignments.

Plaintiff left CEO on November 12, 2002 for a new job - one that she had applied for while on leave and where she received a greater salary. Jefferson provided plaintiff with a positive reference for that position.

Plaintiff now contends that she was discriminated against by defendants City of New Haven and Jefferson on account of her age and a perceived mental disability. Furthermore, it is alleged in her response to defendants' motion for summary judgment that such discrimination also supports charges of intentional infliction of emotional distress and negligent infliction of emotional distress.

Plaintiff states that she has exhausted her administrative remedies.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment

5

proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24.

## I. Age Discrimination

### A. Plaintiff's ADEA claim against defendant City of New Haven

Plaintiff alleges that she was discriminated against because of her age in violation of the ADEA and CFEPA.

The ADEA prohibits treating an age-protected individual less favorably than other individuals on account of her age. 29 U.S.C. § 623(a); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 923 (2d Cir. 1981). A cause of action under the ADEA requires evidence that plaintiff's age was a factor that made a difference in deciding conditions of plaintiff's employment. Geller v. Markham, 635 F.2d 1027, 1035 (2d Cir. 1980). The ADEA requires that "an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion or discharge." Parcinski v.

6

Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982).

Where there is no direct evidence of discrimination, an ADEA claim is analyzed under the shifting burdens described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).[1]  Under this rubric, plaintiff must first establish a prima facie case of discrimination.  Getschmann v. James River Paper Co., Inc., 822 F.Supp. 75, 77 (D. Conn. 1993).  Defendants must then articulate a legitimate, non-discriminatory reason for taking the actions that establish the prima facie case.  The reason provided must be both "clear and specific."  Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985).  If defendants satisfy this requirement, plaintiff must show that defendants' proffered reason is a pretext for discrimination.  Plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision, but only that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001).  At all times, plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated against him.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

A prima facie case of age discrimination requires that plaintiff show that: (1) she was a member of the statutorily age-protected group of 40 to 70 years of age; (2) she was qualified for the position; (3) she suffered an adverse employment action;

---

[1] An ADEA claim is analyzed pursuant to the same framework applicable to Title VII as considered in McDonnell Douglas.  Scaria v. Rubin, 117 F.3d 652, 653 (2d Cir. 1997).

7

and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). At this stage, plaintiff's burden is minimal. Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997).

Plaintiff was born on November 27, 1957 and was 44 years old in 2002 when the relevant events in this case occurred. She is therefore a member of the class protected by the ADEA.

The second element of plaintiff's prima facie case is established through her continued employment at CEO. Plaintiff was not terminated, but voluntarily left her position to go to a different, higher paying position. In addition, the fact that Jefferson found plaintiff's administrative work good enough to warrant the assignment of more substantive endeavors demonstrates that plaintiff was qualified for the Administrative Assistant position that she enjoyed. Plaintiff was clearly qualified for her position.

In order to establish that she received a materially adverse employment action under the ADEA, plaintiff must demonstrate that she has endured a materially adverse change in the terms and conditions of her employment. Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007). Not every unpleasant matter short of discharge or demotion creates a cause of action for violation of the ADEA. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). In order to demonstrate a materially adverse change in employment, plaintiff must illustrate an alteration more disruptive than inconvenience or a change in job responsibilities. Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005). Materially adverse changes must be significant and may include "a termination of employment, a

8

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significant diminishment of material responsibilities, or other indices ... unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

Further, the removal of an employee from an office does not rise to the level of a materially adverse action. See Langley v. Merck & Co., 2005 U.S. Dist. LEXIS 10220 (E.D. Pa. May 26, 2004) (having office changed was not considered an adverse employment action), aff'd, 186 Fed. Appx. 258 (3d Cir. 2006). Nor does the assignment of additional, more difficult responsibilities outside her normal job responsibilities create a materially adverse action. See Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004). Plaintiff's allegations regarding comments made by Jefferson to other employees regarding plaintiff do not rise to the level of a materially adverse action as the comments were not directed towards plaintiff's age. Therefore, plaintiff has failed to establish that she has received an adverse employment action.

As to the fourth prong, the relevant actions do not give rise to an inference of discrimination. Specifically, while plaintiff's former administrative duties were performed by a younger employee after plaintiff received more assignments, this does not give rise to a claim for employment discrimination. Irizarry v. Fortuno, 1997 U.S. Dist. LEXIS 7005, *8 (S.D.N.Y. May 19, 1997) ("[S]imply because the plaintiff was replaced by someone not in the protected age group is insufficient to establish his claim [for age discrimination under the ADEA]."). In addition, the assignment to plaintiff of more difficult tasks does not establish a claim for age discrimination, but rather confidence in her abilities and experience. Finally, removing plaintiff from her old office

9

and giving it to an older employee whose job required her to handle confidential and sensitive information does not establish a claim for age discrimination.

Plaintiff's allegations regarding comments by Jefferson do not raise an issue of material fact as plaintiff does not claim that comments about her age were made repeatedly. See LaCoparra v. Pergament Home Ctrs., Inc., 982 F. Supp. 213, 225 (S.D.N.Y. 1997) (noting that stray comments do not raise an inference of age discrimination).

Plaintiff has therefore failed to establish a prima facie case of age discrimination under the ADEA.

To the extent that plaintiff's allegations may establish such a prima facie case, defendant City of New Haven has produced legitimate non-discriminatory reasons for its conduct. Defendant contends that plaintiff's additional assignments were a function of its confidence in her work, which was a product of her experience and knowledge. Plaintiff's removal from her office was to make way for other employees who require offices to ensure that they could keep the relevant information secure. These reasons satisfy the second prong of the McDonnell Douglas test.

Plaintiff, therefore, must establish that these alleged non-discriminatory reasons for defendants' actions are mere pretext. From the record before the Court, it is apparent that the facts alleged do not show any evidence of a pretext.

The evidence establishes that while plaintiff was moved out of her office, two older employees were given their own offices - Pearson and Greenberg. Plaintiff's other allegations, including name-dropping and out-of-context anecdotes, do not provide sufficient evidence to show pretext. See McKeever v. New York Med. College,

1999 U.S. Dist. LEXIS 3984, *21-24 (S.D.N.Y. March 31, 1999).

Because no reasonable jury could conclude based on the facts at hand that plaintiff suffered from a materially adverse employment action due to her age, summary judgment will be granted as to plaintiff's ADEA claim against City of New Haven.

### B. Plaintiff's ADEA claim against defendant Jefferson

In their memorandum of law, defendants argue that defendant Jefferson is entitled to summary judgment on all counts because she is immune from individual liability on the three causes of action. The ADEA precludes holding individuals liable even where they create the alleged discrimination. See Javier v. Beiersdorf, Inc., 2002 U.S. Dist. LEXIS 8731, *14 (D. Conn. Apr. 11, 2002) ("[A]n individual supervisor cannot be held personally liable under the ADEA."); McKeever, 1999 U.S. Dist. LEXIS 3984 at *27-28 (granting summary judgment to defendant supervisor who allegedly made discriminatory comments); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (holding same under Title VII). Plaintiff cites no case refuting this conclusion and the Court could not find one. Therefore, summary judgment will be granted as to plaintiff's ADEA claim against defendant Jefferson.

## II. Claim under Title VII

### A. Plaintiff's Title VII claim against defendant City of New Haven

Defendants move for summary judgment "with respect to plaintiff's pending claims," including plaintiff's Title VII claim. Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any

11

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). Because plaintiff has failed to allege any facts showing that she was discriminated against based on her "race, color, religion, sex, or national origin," the Court will grant summary judgment as to plaintiff's claim under Title VII against defendant City of New Haven. See Foley v. Danbury, 2001 U.S. Dist. LEXIS 3352 (D. Conn. March 9, 2001) (granting summary judgment on Title VII claim where there is no allegation that plaintiff was discriminated against on the basis of his race, color, religion, sex, or national origin).

### B. Plaintiff's Title VII claim against defendant Jefferson

Under Title VII, only an employer, not an employee's supervisor, may be held liable. See Tomka, 6 F.3d at 1317; McKeever, 1999 U.S. Dist. LEXIS 3984 at *35-36. Therefore, the Court will grant summary judgment as to defendant Jefferson on plaintiff's Title VII claim.

### III. CFEPA Claim and other remaining state law claims.

Plaintiff's only remaining claims arise under state law. Accordingly, under 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over these claims. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Doc. #24). The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 3rd day of April, 2008.

/s/
Warren W. Eginton
Senior United States District Judge